UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREN E. DELCAMP,

      Plaintiff,

v.                                      Case No. 1:08-cv-793
                                      Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

                                 /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on September 9, 1957 (AR 50).[1] She has a high school diploma and took classes at a community college (AR 62, 231). Plaintiff alleged a disability onset date of June 9, 2004 (AR 50). Plaintiff had previous employment as a crew member in a fast food restaurant, a housekeeper, a cashier, a factory polisher, a machine operator and a warehouse worker (AR 75-81). Plaintiff identified her disabling condition as manic depression and bipolar disorder (AR 57). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on May 24, 2007 (AR

---

[1] Citations to the administrative record will be referenced as (AR "page #").

17-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since June 9, 2004, the alleged onset date of disability (AR 19). Second, the ALJ found that plaintiff had the following severe impairments: bipolar disorder, obesity and restless leg syndrome (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20). The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> [T]o lift 20 pounds maximally [sic] lifting ten pounds frequently and 20 pounds occasionally. She can sit, stand, and walk for six hours o an eight hour shift. She should never use ladders, scaffolds, or ropes and only occasionally use ramps or stairs, stoop, crouch, kneel, or crawl. The claimant is limited to simple, unskilled work with an SVP rating of one or two. She is limited to work involving only one, two, or three step instructions. She is unable to perform jobs involving concentration on detailed/precision tasks or multiple/simultaneous tasks. She is limited to jobs that don't require her to compute/calculate, problem solve, or reason. She requires work that will permit an absence, a tardy, or leaving work early one time per month. She can perform work that requires only minimal contact with and minimal direction from a supervisor. She is capable of performing routine work that does not require changes or adaptations in work setting or duties more than once per month.

(AR 20-21). Given these restrictions, the ALJ found that plaintiff could perform her past relevant work as a fast food worker, a cashier, a factory polisher and a machine operator (AR 22). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 22).

4

## III. ANALYSIS

Plaintiff raises two issues for review.

### A. The ALJ failed to give controlling weight to the opinions expressed by plaintiff's psychiatrist, David Mack, D.O., and therapist Shauna Badgely.

The crux of plaintiff's argument is that she is unemployable due to her mental contidion. In support of this argument, plaintiff stated that "[s]he had 31 different jobs in 14 years because of her bipolar condition." Plaintiff's Brief at 23. These numbers were apparently drawn from an interview with the consultative examiner, in which plaintiff stated that "between 1989 and 2003 she reports she had 32 different jobs and she reports she was fired from all of them 'due to Bi-Polar Disorder'"" (AR 231). Plaintiff's FICA records indicate that she worked for approximately 30 employers between 1990 and 2004 (AR 44-48).[2]

Plaintiff sought counseling for various issues as early as 1998 (AR 96-133). In October 2001, personnel at the Clinton Eaton Ingham Community Mental Health Center (CMHC) diagnosed plaintiff with alcohol dependence and cannabis dependence (AR 353). CMHC staff also needed to rule out rule out major depression, bipolar illness and dysthymia (AR 353).

In May 2003, Dr. Mack examined plaintiff and diagnosed her as suffering from "bipolar affective disorder, type II" (AR 309). Based on her history, the doctor also concluded that she had alcohol dependence, in remission (5 years), THC abuse, in remission (4 months), and "mixed substance abuse vs. dependence" (AR 309). The doctor wanted to rule out psychotic

---

[2] Given the poor quality of these records, and the cryptic identification of the employers, the court cannot be certain of the exact number of employers.

features and psychosis (AR 309). In 2003 and 2004, plaintiff had a history of missed or cancelled appointments at CMHC (AR 268, 271, 285, 286, 288, 297, 299, 303).

In November 2004, consulting psychologists John J. Jeter, M.A., L.L.P, and Hugh Bray, Ph.D., diagnosed plaintiff as suffering from bipolar disorder, history of poly-substance abuse, current marijuana abuse, and alcohol dependence (AR 233). Plaintiff had contact with reality, and her thoughts were "logical, organized and conclusive" (AR 232). She responded to instruction and positive criticism, and asked questions appropriately (AR 232). Plaintiff used problem solving strategies for task completion and overall, her responses were within normal time limits (AR 232). She had no difficulty with understanding simple instructions and did not need to have directions repeated or further simplified (AR 232). Plaintiff exhibited symptoms consistent with bi-polar disorder, but denied symptoms of anxiety or panic attacks (AR 233).

Plaintiff received services from CMHC in 2006 and 2007 (AR 388-414). The records included emergency services at CMHC on January 12, 2007, when plaintiff was apparently brought in by the police (AR 389-91). Plaintiff was "ranting and raving," refused to fill out forms, "acting like a 2 yr old," and "freaked out" her friend when she talked about "cutting herself" (AR 389-91). Plaintiff's primary address listed on the CMHC emergency services contact log was "homeless" (AR 389).

In a mental residual functional capacity assessment ("mental RFC") dated February 20, 2007, Dr. Mack and plaintiff's therapist Ms. Badgely, stated that plaintiff was moderately limited in areas including: the ability to remember locations and work-like procedures; the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to ask simple questions or request assistance; and the ability to travel

in unfamiliar places or use public transportation (AR 422-23). Dr. Mack found that plaintiff was "markedly limited" in the 15 remaining evaluation areas (AR 422-23). In his remarks, the doctor stated as follows:

> Ms. Delcamp has been a mental health consumer for several years & has continued to struggle with depression & maintaining stability in order to work. Her hygiene & concentration are not in the normal work limits. She has made multiple attempts in the work force at no success. Please consider her for disability.

(AR 423). However, the doctor did not complete the actual "functional capacity assessment" in § III of the form, but simply stated "See medical records being sent" (AR 424). The ALJ found that Dr. Mack's statements were not supported by the medical record and that "[i]f the claimant's limitations were at the level suggested by Dr. Mack's assessment, hospitalization would have been the only feasible alternative" (AR 22).

An annual update from April 9, 2007, reflects that plaintiff is compliant with her medication, has fair to poor hygiene (e.g., recently did not shower for five weeks), was depressed for several months, and has remained sober for the past year (AR 388).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not

bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

In this case, the ALJ has failed to articulate good reasons for rejecting Dr. Mack's opinions. The ALJ's decision is silent on plaintiff's medical treatment in 2006 and 2007, other than to note that plaintiff underwent an annual clinical assessment in April 2007 and that she continued to live independently and alone (AR 20, 388). After reviewing the record, it appears to the court that the ALJ dismissed Dr. Mack's opinions as unsupported by the medical evidence without addressing the underlying medical records. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405g for a re-evaluation of Dr. Mack's opinions and the medical records in support of that opinion.[3]

---

[3] In this regard, the court notes that the entries in the emergency services contact log from January 12, 2007, indicate extreme behavior by plaintiff that could be consistent with both Dr. Mack's opinions and the ALJ's conclusion that hospitalization was the only feasible alternative for plaintiff.

> **B.** **The ALJ erred in failing to ask hypothetical questions based on severe impairments found by the ALJ of bipolar disorder, obesity and restless leg syndrome, that assumed the claimant's ability and persistence of pace to be employed five days per week eight hours per day week after week.**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff contends that the ALJ's hypothetical question is flawed because the hypothetical question assumed that plaintiff could work eight hours a day, five days a week and that "[t]here is nothing [in the hypothetical question] to suggest impairments for bipolar disorder, obesity, and restless leg syndrome," and that the hypothetical question did not fairly summarize the medical evidence in this case. Plaintiff's Brief at 25. There is a considerable body of law regarding the sufficiency of hypothetical questions posed to vocational experts in social security cases. Plaintiff, however, cites no authority or facts from the administrative record to support her bald assertions of error. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637,

641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems these arguments waived.

## IV. Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), for the reasons stated in Section III.A, *supra.* On remand, the Commissioner should re-evaluate the opinions of Dr. Mack regarding the extent of plaintiff's mental limitations.


Dated: September 8, 2009                     /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).